IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| ANDREA MERCENA MORRIS, | ) |
| | ) |
| Plaintiff, | ) No. 0:16-cv-2021-DCN |
| vs. | ) |
| | ) **ORDER** |
| NANCY A. BERRYHILL, *Acting Commissioner of Social Security* | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on United States Magistrate Judge Paige Gossett's Report and Recommendation ("R&R") that this court affirm Acting Commissioner of Social Security Nancy Berryhill's ("the Commissioner") decision denying claimant Andrea Mercena Morris's ("Morris") application for disability insurance benefits ("DIB"). Morris filed objections to the R&R. For the reasons set forth below, the court adopts the R&R and affirms the Commissioner's decision.

## I. BACKGROUND

### A. Procedural History

Morris initially filed for DIB on July 14, 2008, alleging disability beginning January 1, 2008. Tr 20. The Social Security Administration denied Morris's claim initially and upon reconsideration. Id. Morris requested a hearing before an administrative law judge ("ALJ"), and ALJ Christine E. Dibble ("ALJ Dibble") held a hearing on June 29, 2010. Tr. 30–47. ALJ Dibble issued a decision on November 1, 2010, finding that Morris was not disabled under the Social Security Act (the "Act"). Id. 20–27. Morris requested Appeals Council review of the ALJ's decision. Id. at 105. The Appeals Council denied Morris's request for review, rendering ALJ Dibble's decision the

1

final action of the Commissioner. Tr. 1–6. Morris appealed ALJ Dibble's decision to this court, which remanded for further evaluation of opinions of Dr. Jill Peterson. Tr. 487–508. Upon remand, the Appeals Council directed the ALJ to further proceedings consistent with the order of this court. Tr. 511.

On December 3, 2014, a second hearing was held where Morris appeared via video teleconference before ALJ Roseanne P. Gudzan ("ALJ"). Tr. 439–65. On February 13, 2015, the ALJ again issued a decision finding that Morris was not disabled. Tr. 413–32. On April 23, 2015, Morris filed a request for review with the Appeals Council. Id. at 399–407. On April 14, 2016, the Appeals Council denied review, making the ALJ's decision became the final decision of the Commissioner for purposes of judicial review. Id. at 396–97.

Morris filed the present action seeking review of the ALJ's decision on June 17, 2016. ECF No. 1. The magistrate judge issued an R&R on July 24, 2017 recommending ALJ's decision be affirmed. ECF No. 17. Morris filed objections to the R&R on August 7, 2017, to which the Commissioner responded on August 17, 2017. The matter is now ripe for the court's review.

### B.     Medical History

Because Morris's medical history is not directly at issue here, the court dispenses with a lengthy recitation thereof and instead notes a few relevant facts. Morris was born on August 26, 1961 and was 48 years old at the time of her alleged disability onset date. Tr. 430. She communicates in English and has obtained a high school degree education. Her past relevant work experience was as a cashier, a factory inspector, a sewing machine operator, and a small business owner of an arcade. Tr. 129, 134.

### C. ALJ's Decision

The ALJ employed the statutorily-required five-step sequential evaluation process to determine whether Morris was disabled from January 1, 2008 through the date last insured, June 30, 2010. The ALJ first determined that Morris did not engage in substantial gainful activity during the relevant period. Tr. 418. At the second step, the ALJ found that Morris suffered from the following severe impairments: degenerative disc disease status post cervical spine fusion with cervical radiculopathy, diabetes mellitus, hypertension, chronic kidney disease, headaches, renal osteodystrophy, and anemia. Id. At step three, the ALJ found that Morris's impairments or combination of impairments did not meet or medically equal one of the listed impairments in the Agency's Listings of Impairments ("the Listings"). Tr. 418–20. See 20 C.F.R. Part 404, Subpt. P, App'x 1. Before reaching the fourth step, the ALJ determined Morris had the residual function capacity ("RFC") to perform sedentary work with several limitations. Tr. 422. Specifically, the ALJ found that Morris could only engage in sedentary work as defined in 20 CFR 404.1567(a), except she could occasionally climb ramps or stairs and stoop but could never kneel, crouch, crawl, climb ladders, ropes or scaffolds, balance for safety on dangerous surfaces, or have exposure to workplace hazards such as unprotected heights and dangerous machinery and parts. Id. The ALJ also found that Morris could occasionally reach overhead and frequently reach out bilaterally and frequently handle and finger bilaterally. The ALJ found at step four that Morris was not capable of performing past relevant work. Id. Finally, at step five, the ALJ determined that, considering Morris's age, education, work experience, and RFC, she could perform jobs existing in significant numbers in the national economy. Tr. 430–31. Therefore, the ALJ

concluded that Morris had not been under a disability within the meaning of the Act since the alleged onset date.

## II.   STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made.  28 U.S.C. § 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of the magistrate judge.  See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court.  Mathews v. Weber, 423 U.S. 261, 270–71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied."  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Id. (internal citations omitted).  "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence."  Id.  Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an

improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## III. DISCUSSION

Morris objects to the Magistrate Judge's R&R on three grounds, arguing that the ALJ erred in: (1) failing to adequately explain Morris's RFC findings; (2) failing to properly assess the opinion of Dr. Jill Peterson; and (3) failing to properly evaluate the credibility of Morris. ECF No. 18. The court examines each objection in turn.

### 1. Residual Functional Capacity

Morris first argues[1] the ALJ failed to adequately explain Morris's residual functional capacity as required by SSR 96-8p on two particular issues: 1) diabetes and 2) the limited range of motion due to cervical spine surgery and cervical radiculopathy. ECF No. 18 at 1–3.

In formulating the RFC, the ALJ is to consider all impairments, even those that are not severe, "and revie[w] 'all relevant medical and other evidence.'" Jackson v. Berryhill, 2017 WL 685603, at *6 (E.D.N.C. Jan. 23, 2017). The ALJ must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Monroe v. Colvin, 826 F.3d. 176, 187–88. The RFC must include a narrative discussion

---

[1] As an initial matter, the Commissioner takes issue with Morris's objections finding that Morris appears to challenge selective statements or findings by the ALJ without viewing the decision or analysis as a whole, contrary to the appropriate substantial evidence review. To the extent that Morris is asking the court to analyze the facts in the record and reweigh the evidence, this runs contrary to the substantial evidence standard of review. See Craig, 76 F.3d at 589 (Holding that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary").

5

describing how the evidence supports each conclusion, citing specific medical facts such as laboratory findings and non-medical evidence like daily activities and observations. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). The Fourth Circuit has held that "remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or whether other inadequacies in the ALJ's analysis frustrate meaningful review." Jackson, 2017 WL 685603 at *6; Mascio, 780 F.3d at 636. Here, the ALJ has adequately explained Morris's RFC as required by SSR 96-8p.

### A. Diabetes

Morris asserts that the "ALJ did not properly explain how she determined that Morris's physical examinations were normal with regard to diabetes." ECF No. 18 at 1. She argues that the ALJ failed to explain her determination that "evidence shows despite [Morris's] poorly controlled hypertension and diabetes during this period, her physical examinations with respect to these impairments remained normal." ECF No. 13 at 23. The Commissioner rebuts that it was reasonable for the ALJ to rely on Morris's physical examination findings, which were normal, to determine that Morris's hypertension and diabetes were not work-preclusive and did not create greater functional limitations than those already provided for in the RFC. ECF No. 15 at 8.

When a claimant asserts that the ALJ's RFC assessment lacked an explanation, the claimant must assert why the "missing" evidence would change the outcome of the ALJ's decision. Jackson, 2017 WL 685603 at *8. That being said, where there is no evidence to support the ALJ's conclusion, remand may be appropriate. Mascio, 780 F.3d at 636. For example, in Mascio, the Fourth Circuit remanded where the ALJ failed to

6

explain whether the claimant could perform certain functions for a whole workday where there was conflicting evidence in the record regarding the claimant's weight lifting ability.  Id.  Here, however, the ALJ's decision explicitly notes Morris's noncompliance with the treatment plan for diabetes, as documented by a number of physicians on several occasions from January 2008 through June 2010.  Tr. 423–26.  For example, Morris's treating physician Dr. Sean B. Murphy specifically noted that Morris "needed better control of her blood pressure and glucose."  Tr. 426.  The ALJ discusses at some length that Morris's examinations were normal at a variety of medical visits, including at the Andrews Medical Center in January 24, 2008, the consultative examination performed by Dr. Temisan L. Etikerentse on December 9, 2008 where Morris stated that her diabetes was "well controlled," and when Morris was seen by a family nurse practitioner at the St. James-Santee Family Health Center on July 21, 2009.  Tr. 423–24. This is more similar to Jackson, where the ALJ noted the claimant's diabetes, and discussed both the claimant's reports on the effectiveness of the medication and the medical reports of non-compliance, as well as evidence of generally normal or minimal exam findings.  Jackson, 2017 WL 685603 at *8.

Furthermore, as in Jackson, Morris failed to allege any specific functional limitations that should be added to the RFC to account for her diabetes.  And indeed, despite the lack of proof of related functional loss the ALJ provided for additional postural and environmental limitations in Morris's RFC "to account for potential effects of headaches and fluctuations in blood sugar and blood pressure."  Tr. 430.

    **ii.**    **Cervical Spine**

Morris contends the ALJ also erred in assessing her RFC by failing to cite to MRI evidence in the record when assessing her limitations due to neck pain. ECF No. 18 at 2–3. Specifically, Morris argues that the ALJ should have discussed her MRI results. Id. at 3.

With respect to the MRI imaging studies not specifically discussed by the ALJ, an ALJ need not specifically discuss and analyze every piece of evidence so long as it is possible for the reviewing court to realize that all relevant evidence was considered." Brewer v. Astrue, 2008 WL 4682185, *3 (E.D.N.C. Oct 21, 2008) (Discussing the line of cases holding that the ALJ is not required to specifically address each piece of evidence in the narrative opinion). For example, in Jackson, an ALJ erred in failing to cite to a cervical spine MRI documenting claimant's cervical spine stenosis. Jackson, 2017 WL 685603 at *8. The Jackson court stated that an ALJ is not required to specifically address each piece of evidence in the narrative opinion, and furthermore that the claimant had failed to demonstrate how discussion of the evidence would change the outcome of the ALJ decision. Id.

Here, the ALJ's RFC assessment is supported by substantial evidence. Like in Jackson, Morris contends that the ALJ erred in failing to cite diagnostic studies documenting her cervical spine condition. She points to a cervical spine MRI taken on March 4, 2010 "which showed a disc herniation at C4-5 with the narrowing of the neural canal and posterior displacement of the proximal nerve root." ECF No. 13 at 25. However, as in Jackson, Morris fails to demonstrate how the ALJ's discussion of the MRI evidence would change the outcome of the decision. She simply contends the omitted MRI evidence "supports Morris's statements of pain in her neck and arm," and

that "given the MRI evidence that was ignored by the ALJ, it is unclear if an RFC with frequent reaching, handling, and fingering . . . actually accounts for the reported symptoms that are supported by the record." ECF No. 13 at 25. Indeed, the ALJ specifically discusses Morris's postoperative follow-up with surgeon Dr. Mark Triana, who indicated that Morris was "doing actually quite well after her two level fusion." Tr. 423. Additionally, the ALJ discusses Dr. Etikerentse's consultative exam of Morris on December 9, 2008, where Dr. Etikerentse found that Morris had slight reduction in the range of movement in her neck and some discomfort, but ultimately diagnosed Morris with no significant problems related to her post cervical spine fusion. Tr. 424.

Upon a careful review of the record, the court is satisfied that the ALJ assessed all of the relevant evidence, even where she did not specifically discuss each of the pieces of evidence, and her RFC determination is supported by substantial evidence.

### 2. Treating Physician Evidence.

Next, Morris argues that the ALJ failed to properly consider the opinions of Dr. Jill Peterson. Specifically, Morris argues that although Dr. Peterson treated and evaluated Morris only two times, Morris had previously been seen in the same hospital where Dr. Peterson practiced. ECF No. 13 at 3. The Commissioner contends the ALJ properly considered several factors in evaluating Dr. Peterson's opinion evidence including the length of the treatment relationship, frequency of examination, and the nature and extent of the treatment relationship. ECF No. 17 at 12. This court finds the ALJ's assessment to not afford "controlling weight" to Dr. Jill Peterson's June 8, 2010 Disability Form to be supported by substantial evidence.

A treating physician's opinion is evaluated and weighed pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005). Typically, an ALJ is to give greater weight to the opinion of a treating physician because a treating physician is best able to provide a "detailed, longitudinal picture" of the claimant's alleged disability and may bring unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone. Lewis v. Berryhill, 858 F.3d 858, 867 (4th Cir. 2017). However, if the treating physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, then it should be accorded significantly less weight. Craig, 76 F.3d at 585. A district court will not disturb an ALJ's determination on the weight to be assigned to a medical opinion, including the opinion of a treating physician, "absent some indication that the ALJ has dredged up 'specious inconsistencies' . . . or has not given good reason for the weight afforded a particular opinion." Craft v. Apfel, 164 F.3d 624 (4th Cir. 1998).

For example, in Lewis the court remanded where the ALJ's analysis "spans only four lines and overlook[ed] critical aspects of the claimant's treatment history." Lewis, 858 F.3d at 867. There, the court was concerned with the ALJ's failure to note that neither of the claimant's treating physicians suspected her of exaggerating her symptoms and that she endured various adjustments to her medications as they lost effectiveness overtime. Id.

However, here, the ALJ adequately explained why she did not give Dr. Peterson's opinion "controlling weight" under 20 C.F.R. §404.1527(c)(2) and §416.927(c)(2). First, Dr. Peterson's conclusions are inconsistent with the record. See Mastro v. Apfel, 270 F.2d 171, 178 (4th Cir. 2001) (stating that if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight). In reaching this decision, the ALJ noted that Dr. Peterson had examined Morris only two times over a period of seven days. Tr. 426. See Lightfoot v. Colvin, 2015 WL 5671420, at *4 (D.S.C. Sept. 25, 2015) (upholding ALJ's decision to not afford "controlling weight" to the opinion of two treating physicians which were not based on long treatment history, were inconsistent with each other, and were inconsistent with other evidence of record). The ALJ also discusses that Dr. Peterson's examination of Morris revealed normal strength, sensation and reflexes, and that even though Morris complained of shortness of breath and heart fluttering, her EKG showed a normal sinus rhythm. Tr. 425–26. Given that Morris's examination was within normal limits, the ALJ's assignation of less than controlling weight to the disability form that Dr. Peterson filled out was based on substantial evidence.

Based on the infrequency with which Dr. Peterson saw Morris as well as the contradictory nature of Dr. Peterson's opinion, the ALJ was not obligated to adopt Dr. Peterson's opinion about Morris's ability to work. 20 C.F.R. § 404.1527(d)(1).

### 3. Credibility

Lastly, Morris argues that the ALJ failed to properly evaluate the credibility of Morris's subjective complaints. ECF No. 18 at 6. Specifically, Morris contends that the ALJ failed to show that her daily activities were inconsistent with a disability finding and

that the ALJ failed to consider side effects of medication. Id. The court finds that the ALJ's assessment of Morris's credibility is supported by substantial evidence.

The ALJ is responsible for making credibility determinations and resolving conflicts in the evidence. Hays, 907 F.2d at 1456. Consequently, the ALJ is accorded deference with respect to determinations of a claimant's credibility. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Indeed, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." Id.

Regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology. See Craig, 76 F.3d at 593. Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Id. at 594. First, the ALJ must determine whether the claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. Id. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of that pain, and the extent to which it affects a claimant's ability to work. Id. at 595. At step two, the inquiry considers "all available evidence," including a claimant's statements about his pain, medical history, medical signs, laboratory findings, any objective medical evidence of pain, evidence of a claimant's daily activities, specific descriptions of pain, any medical treatment taken to alleviate the pain, and "any other evidence relevant to the severity of the impairment." Id.

Upon a review of the record, the court finds that the ALJ properly evaluated Morris's subjective accounts of pain. In Spencer v. Astrue, No. 4:09-CV-120-FL, 2010

WL 1957360, at *7 (E.D.N.C. Apr. 22, 2010) the court found the ALJ properly evaluated the claimant's subjective opinion where the ALJ noted that the claimant's testimony of her limited daily activities which included making the bed, shopping for groceries, and attending church seemed to contradict her complaints of physical pain and use of medication. Id. at *7. Certainly, where the ALJ compares the claimant's alleged functional limitations to the claimant's RFC rather than to other evidence in the record, remand may be necessary. See Siddiqui v. Colvin, 95 F. Supp. 3d 833, 845 (D. Md. 2015) (remanding where ALJ found claimant "less than credible" because her statement that she took a bus to get to the hearing contradicted her statement that she did not like being around people without providing an explanation as to why those were contradictory statements.)

    Here, the ALJ discussed in detail Morris's subjective reports, medical findings, treatment courses and their effectiveness, opinion evidence, as well as Morris's daily activities. Tr. 423–30. In particular, the ALJ found that Morris was able to tend to most of her personal hygiene, cook, shop, drive, sit on her porch, watch television, listen to the radio, go out to eat, attend church. Tr. 427. The ALJ also noted Morris's December 3, 2014 testimony that she was able to drive. Id. Unlike Siddiqui, the ALJ properly compared Morris's functional limitations to other evidence in the record which included—but was not limited to—Morris's daily activities. Indeed, the ALJ discusses at length Morris's medical treatments and medication noncompliance, and the effect that this has had on her impairments. Tr. 422–27. See Mickles v. Shalala, 29 F.3d 918, 929 (4th Cir.1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations.").

## IV. CONCLUSION

Based on the foregoing, the court **ADOPTS** the R&R and **AFFIRMS** the Commissioner's decision.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**September 21, 2017
Charleston, South Carolina**